```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
     v.                            )       1:05cv00625
                                   )
4960 CECIL NORMAN ROAD, RANDLEMAN   )
PROVIDENCE TOWNSHIP, RANDOLPH       )
COUNTY, NORTH CAROLINA, WITH ALL    )
APPURTENANCES AND IMPROVEMENTS      )
THEREON, AS MORE FULLY DESCRIBED    )
IN BOOK 1397, PAGE 0323, RANDOLPH   )
COUNTY REGISTER OF DEEDS            )
(REGISTERED OWNERS JOSEPH K.        )
NEWBOLD AND AMY JOE MCDOWELL),      )
et al.,                            )
                                   )
            Defendants.            )
```

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge

This matter arises out of a civil forfeiture proceeding pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981. Before the court are motions of Joseph and Amy Newbold (the "Newbolds"), former owners of the forfeited defendant properties, seeking a host of remedies including injunctive relief and an order to show cause for civil contempt, pursuant to Rules 60(b)(6), 65(a), and 70 of the Federal Rules of Civil Procedure and Article III of the U.S. Constitution.[1] (Docs. 63, 65.) The financial institutions that made loans to the Newbolds that were secured by the forfeited properties are the subjects of their

---

[1] The Newbolds also sought entry of default against one of the lenders (Doc. 79), which was denied (Doc. 82).

attacks and have filed responses. (Docs. 72, 73, 74.) Because of an absence of any dispute as to a material fact, no evidentiary hearing is warranted. <u>Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.</u>, 511 F.3d 535, 552 (6th Cir. 2007); <u>Sons of Confederate Veterans, Inc. v. Glendening</u>, 954 F. Supp. 1099, 1099 (D. Md. 1997). For the following reasons, the motions will be denied.

**I. BACKGROUND**

The Newbolds, husband and wife, were owners of several properties that, because of criminal activity, became the subject of a civil forfeiture proceeding by the United States on July 15, 2005. (Doc. 1.) Certain properties were subject to deeds of trust securing promissory notes made by the Newbolds to several lenders. Among those lenders who filed appropriate answers or otherwise sought to preserve their interest as "innocent owners" in the forfeiture proceedings were Chase Home Finance, LLC ("Chase"), Countrywide Home Loans, Inc. ("Countrywide"), and Homecomings Financial ("Homecomings") (collectively, the "lenders").[2] (Docs. 31, 32, 49, 50, 51.) The Government reached settlements separately with the Newbolds, on the one hand, and with each of these three lenders, on the

---

[2] A fourth lender, CitiMortgage, Inc., also appeared in the forfeiture action to seek to preserve its interests (Doc. 77), but the Newbolds have withdrawn their motions as to it (Doc. 85).

2

other hand, as reflected in the final Decree and Judgment of Forfeiture entered by the court on January 19, 2007 (the "Decree and Judgment"). (Doc. 61.) Under the Decree and Judgment, all defendant properties at issue were forfeited to the Government.

Each lender's settlement agreement contains nearly identical terms. The Countrywide agreement pertains to property located at 1517 Marion Street in Greensboro, North Carolina; the Chase agreement pertains to property at 3403 Immanuel Road in Greensboro, North Carolina; and the Homecomings agreement pertains to property at 1959 Lakeview Road in Asheboro, North Carolina. Paragraph 2(a) of each agreement provides that upon sale of the property (after payment of certain outstanding taxes and expenses) the Government will not contest payment to the lender from the proceeds of, among other amounts, all unpaid principal and accrued interest due the lender from the Newbolds. (Doc. 49, Ex. 1 ¶ 2; Doc. 50, Ex. 1 ¶ 2; Doc. 51, Ex. 1 ¶ 2.) Each agreement is limited to the lenders' rights "under the lien instrument" (i.e., the deed of trust) but entitles the lender to interest that accrues contractually until the date of payoff, as provided for in the underlying promissory notes. (Doc. 49, Ex. 1 ¶ 6; Doc. 50, Ex. 1 ¶ 7; Doc. 51, Ex. 1 ¶ 7.) Each lender also agreed to "notify the U.S. Attorney at the end of the first payment cycle in which a payment is not made by the debtor under

3

the terms specified in the Note." (Doc. 49, Ex. 1 ¶ 7; Doc. 50, Ex. 1 ¶ 8; Doc. 51, Ex. 1 ¶ 8.) Finally, each agreement acknowledges that payment to the lender upon sale of each property "shall be in full settlement and satisfaction of any and all claims by [the lender] . . . to the defendant property." (Doc. 49, Ex. 1 ¶ 4; Doc. 50, Ex. 1 ¶ 5; Doc. 51, Ex. 1 ¶ 5.) The Newbolds are not parties to any of the lenders' settlement agreements with the Government.

The Government resolved the Newbolds' claims in separate settlement agreements with them. In one agreement, Joseph Newbold, individually and on behalf of The Ubermensch Group, Inc., agreed that all defendant properties were subject to forfeiture to the Government. (Doc. 8 ¶ 1.) In a separate settlement agreement, Amy Newbold was permitted to keep certain properties not at issue here in exchange for certain payments. (Doc. 48, Ex. 1 ¶¶ 2-6.) Neither of the Newbolds' settlement agreements with the Government addressed the Newbolds' rights as to the lenders.

At all times relevant, the lenders held promissory notes that were secured by deeds of trust on the three properties at issue. Homecomings held a promissory note executed by Joseph Newbold on August 21, 2002, in the principal amount of $80,820, plus interest, and secured by a deed of trust executed by both

4

Newbolds on the real property located at 1959 Lakeview Road. (Doc. 73, Exs. A & B.) Chase held a promissory note executed by Joseph and Amy Newbold on April 22, 2003, in the principal amount of $36,000, plus interest, and secured by a deed of trust on the real property located at 3403 Immanuel Road. (Doc. 32, Exs. A & B.) Countrywide held a promissory note executed by Joseph and Amy Newbold on May 12, 2003, in the principal amount of $41,017, plus interest, and secured by a deed of trust on the real property located at 1517 Marion Street. (Doc. 31, Exs. A & B.)

Soon after the Decree and Judgment was entered, the Newbolds ceased making payments under the promissory notes, and the lenders apparently reported delinquencies to credit agencies. (Doc. 65 at 3-7, 9-10.) In May 2007, the Government transferred its deed to the 1517 Marion Street property to Countrywide in lieu of foreclosure, which was also reported to credit agencies. (Id. at 3-5, Exs. D-G.) Homecomings also reports, without contradiction by the Newbolds, that it received payment from a December 2007 sale of the 1959 Lakeview Road property and that it was (at the time of briefing) in the process of cancelling the deed of trust. (Doc. 73 at 3 n.1, Ex. C ¶¶ 17, 28.)

In their motions before the court, the Newbolds contend that under the various settlement agreements the Government assumed all further payments on the notes. (Id. at 3, 5, 9.) Because the Decree and Judgment relieved them of any further obligation, they argue, the lenders were prohibited from pursuing foreclosure, assessing additional interest and penalties against them, or reporting negative entries as to their credit. (Id. at 4-5, 5-7, 9-10.) The Newbolds seek several types of relief, including (1) a finding that the lenders' actions violated the Decree and Judgment and constitute civil contempt; (2) a finding that the allegedly contumacious acts "proximately caused damages and actual loss," such as "economic loss, defamation and libel, and deliberate infliction of mental suffering, humiliation and anguish;" (3) compensatory daily fines; (4) an injunction against the lenders from reporting negative credit information; and (5) an order requiring withdrawal of negative credit information already reported to any credit bureau or credit reporting business. (Doc. 63 at 3-4; Doc. 65 at 18-19.)

**II. ANALYSIS**

    **A. The Newbolds' Motion for Relief from Judgment under Rule 60(b)**

The Newbolds request that the Decree and Judgment be modified to enjoin the lenders from "reporting any foreclosure,

6

receipt of deed in lieu of foreclosure, late payment or any other event relating to debts secured by the defendant properties." (Doc. 65 at 19; Doc. 66 at 1-2, 6-7.) They also seek an order to require the lender to withdraw any negative information previously reported to a credit bureau or credit reporting business. (Doc. 65 at 19; Doc. 66 at 6-7.)

Rule 60(b)(6) of the Federal Rules of Civil Procedure provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief." "The consideration of Rule 60(b) motions proceeds in two stages." Nat'l Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 264 (4th Cir. 1993). A movant must first demonstrate the threshold conditions of "'timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances.'"[3] Dowell v. State Farm Fire & Cas. Auto. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993) (quoting Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984)). If these conditions are satisfied, one or more of the six enumerated grounds for relief in Rule 60(b)(1)-(6) must then be demonstrated. Id. Rule 60(b) motions are committed to the sound discretion of the trial

---

[3] Not all courts require movants to show the fourth threshold condition of "exceptional circumstances." E.g., Gray, 1 F.3d at 264; Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir. 1987).

7

court. Nat'l Org. for Women v. Operation Rescue, 47 F.3d 667, 669 (4th Cir. 1995) (per curiam).

The threshold condition of a meritorious claim or defense is absent. To prove a meritorious claim, a movant must show that granting relief from the final order "will not in the end have been a futile gesture." Boyd v. Bulala, 905 F.2d 764, 769 (4th Cir. 1990). Although an actual likelihood of success at trial need not be shown, there must be an allegation that, if proven at trial, would constitute a meritorious claim. Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992); see Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988). Conclusory allegations, however, will not suffice. Superline Transp. Co., 953 F.2d at 21; Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970); see United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982).

The Newbolds argue that the provisions of the settlement agreement stating that payment to the lender "shall be in full settlement and satisfaction of any and all claims by [the lender] . . . to the defendant property" relieves them of any further obligation under the Notes. (Doc. 66 at 5; Doc. 49, Ex. 1 ¶ 4; Doc. 50, Ex. 1 ¶ 5; Doc. 51, Ex. 1 ¶ 5.) Their motion is

8

predicated upon a mistaken belief that the Government has assumed responsibility for repayment of their debts. (Doc. 65 at 5, ¶ 18.) This contention is without merit. The documents clearly limit the lenders' release to their claims "to the defendant property" and "all claims resulting from the incidents or circumstances giving rise to this forfeiture action." (Doc. 49, Ex. 1 ¶ 4; Doc. 50, Ex. 1 ¶ 5; Doc. 51, Ex. 1 ¶ 5.) The Newbolds' obligation to their lenders under the terms of the promissory notes arises independently of any security interest they granted the lenders through the deeds of trust on the forfeited properties. While the Newbolds forfeited title to the properties because of underlying criminal activity in violation of 21 U.S.C. § 881 and 18 U.S.C. § 981, they were not released from any obligation to repay their debts.

Nor was the Government's agreement to pay the lenders upon sale of the properties an assumption of any obligation under the promissory notes. On the contrary, it was simply an agreement to protect the lenders' interests in the properties as innocent owners. The Newbolds all but admit so, as their fall-back position is to seek to foist their obligations onto the Government under what they term the "constructive effect" of the Decree and Judgment. (Doc. 76 at 1.) Contracts and orders are

9

read by their plain terms, however, not their so-called "constructive effect" or penumbras.

The Newbolds also fail to demonstrate that their circumstances are extraordinary or exceptional. Dowell, 993 F.2d at 48. Extraordinary circumstances "by no stretch of the imagination can [include a] . . . voluntary, deliberate, free, [and] untrammeled choice." Id. (quoting Ackerman v. United States, 340 U.S. 193, 200 (1950)). In this case, there is no evidence that the Newbolds' decision to enter into their settlement agreements with the Government, which were reflected in the Decree and Judgment, was anything other than a "deliberate, free, [and] untrammeled choice." Not only do the settlement agreements fail to support any inference that the Newbolds were relieved of their duties under their promissory notes, they contain affirmative evidence reflecting the parties' intention that the Newbolds remain bound by their notes. The lenders' settlement agreements with the Government require the lenders to notify the United States Attorney whenever the debtor fails to make a payment under the promissory notes. (Doc. 49, Ex. 1 ¶ 7; Doc. 50, Ex. 1 ¶ 8; Doc. 51, Ex. 1 ¶ 8.) Paragraph 2 of each of the lenders' settlement agreements also reports on the outstanding balances of the promissory notes, as well as the fact that no accrued interest was yet due, indicating that all

10

payments had been made to date. (Doc. 49, Ex. 1 ¶ 2; Doc. 50, Ex. 1 ¶ 2; Doc. 51, Ex. 1 ¶ 2.) The lenders' settlement agreements by their terms relate solely to their rights "under the lien instrument" and not under any promissory note. (Doc. 49, Ex. 1 ¶ 6; Doc. 50, Ex. 1 ¶ 7; Doc. 51, Ex. 1 ¶ 7.) Moreover, nowhere did the lenders waive any rights to proceed against the Newbolds for repayment of the promissory notes. The Newbolds are simply not permitted under the guise of this forfeiture proceeding to avoid repayment of their promissory notes to the lenders merely because title to the property has been forfeited.[4]

The Newbolds' various requests for injunctive and compensatory relief, including for alleged "economic loss, defamation and libel, and deliberate infliction of mental suffering, humiliation and anguish" and purported violations of federal laws related to debt collection and credit reporting (Doc. 65 at 18-19), are devoid of merit both factually and legally. Accordingly, their motion under Rule 60 is denied.

---

[4] Because the Newbolds fail to present a meritorious claim, the court need not address whether they could satisfy the other threshold conditions. The court notes as well that the lack of merit in their argument would render the Newbolds unable to satisfy the Rule 60(b) grounds.

11

**B.   The Newbolds' Motion Pursuant to Rule 70**

The Newbolds seek an order to show cause why the lenders should not be held in civil contempt because they allegedly failed to comply with their obligations under the Decree and Judgment.  (Doc. 65 at 3-10.)  Rule 70 provides that "[i]f a judgment requires a party to convey land . . . or to perform any other specific act and the party fails to comply within this time specified, the court may order the act to be done."  Fed. R. Civ. P. 70(a).  The Rule also allows for the disobedient party to be held in contempt.[5]  Fed. R. Civ. P. 70(e); see 18 U.S.C. § 401 (2000 & Supp. 2007); Int'l Union, UMW v. Bagwell, 512 U.S. 821, 831 (1994) (finding that courts "have embraced an inherent contempt authority . . . as a power 'necessary to the exercise of all others'").

The Newbolds fail to demonstrate that the lenders have defaulted on any court-ordered obligation.  In their motion, the Newbolds claim that the Decree and Judgment incorporates the

---

[5]  To establish civil contempt, the movant bears the burden of proving each of the following four elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000) (citation omitted).

12

settlement agreements between the lenders and the Government, thereby transforming any violation of a settlement agreement into a violation of a court order. (Doc. 65 at 2-3.) However, a private settlement agreement is not "enforceable by a district court as an order of the court unless the obligation to comply with its terms is 'made part of the order of dismissal – either by separate provision (such as a provision retaining jurisdiction over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.'" Smyth v. Rivero, 282 F.3d 268, 280-81 (4th Cir. 2002) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994)).

In this action, the Decree and Judgment orders that certain defendant property "shall be forfeited to the United States of America, . . . subject only to the Settlement Agreements." (Doc. 60 at 5.) The Decree and Judgment contains no provision expressly retaining jurisdiction over the settlement agreements, nor does its reference to the settlement agreements generally thereby incorporate their terms. Smyth, 282 F.3d at 273, 284 (holding that the district court had not retained jurisdiction or incorporated the terms of the settlement agreement merely by stating that "the defendant is unable to seek repayment of TANF benefits because of the binding agreement between the parties"); Bowen v. Monus (*In re* Phar-Mor, Inc. Sec. Litig.), 172 F.3d 270,

13

274 (3d Cir. 1999) (holding that district court's dismissal "pursuant to the terms of the settlement agreement" did not incorporate the terms of the settlement or retain jurisdiction); Scelsa v. City Univ. of N.Y., 76 F.3d 37, 41 (2d Cir. 1996) (holding that the court lacked jurisdiction to enforce a settlement agreement where the dismissal order stated that the "action is dismissed with prejudice and without costs to any party, except as set forth in the Settlement Agreement"); Miener ex rel. Miener v. Mo. Dep't of Mental Health, 62 F.3d 1126, 1128 (8th Cir. 1995) (stating that the "mere reference to the fact of settlement does not incorporate the settlement agreement[s] into the . . . order"). Thus, the court's authority under the Decree and Judgment does not extend to enforcement of the terms of the settlement agreements.[6]

The court also rejects the Newbolds' claim for civil contempt. (Doc. 65 at 1; Doc. 66 at 3-7.) The Newbolds seek an award of compensatory fines in the amount of $1,000 per day for each day of the lenders' alleged non-compliance with any settlement agreement incorporated into the Decree and Judgment.

---

[6] Even if the lenders had violated their settlement agreements with the Government as alleged (Doc. 65 at 3-5, 5-7, 9-10), the Newbolds never demonstrate standing to assert any rights thereunder. The Newbolds were not parties to those agreements, which were between the Government and each lender. To the extent the Newbolds may have claims against any lender under their separate agreements, such claims are not before this court and no opinion is expressed as to them.

14

(Doc. 65 at 17-18, 19.) As noted previously, however, there is no clear and convincing evidence that the lenders failed to perform any act required of them under the Decree and Judgment. Accordingly, their motion under Rule 70 is denied.

**C. The Newbolds' Motion for Preliminary Injunction under Rule 65(a)**

Fashioning their request under Rule 65(a) of the Federal Rules of Civil Procedure, the Newbolds seek to enjoin the lenders from reporting late payments or defaults on their promissory notes to any credit bureau or credit reporting agency, as well as to require that past negative information be removed.[7] (Doc. 63 at 3-4.)

The Newbolds' effort to invoke Rule 65(a) is without merit. Rule 65 contemplates the entry of preliminary injunctive relief pending a trial on the merits. <u>Univ. of Tex. v. Camenisch</u>, 451 U.S. 390, 395 (1981). The present case has already proceeded to final judgment, and the Newbolds have failed to provide any support for application of relief under Rule 65(a) at this stage.

Further, even under the balancing test of <u>Blackwelder Furniture Co. of Statesville, Inc. v. Selig Mfg. Co.</u>, 550 F.2d 189, 196 (4th Cir. 1977), the request fails. A preliminary

---

[7] The Newbolds also style their claim for injunctive relief under Federal Rule of Civil Procedure 60(b). (Doc. 65 at 19.)

15

injunction is "an extraordinary remedy . . . to be applied only in the limited circumstances which clearly demand it." <u>Direx Israel, Ltd. v. Breakthrough Med. Corp.</u>, 952 F.2d 802, 811 (4th Cir. 1991). In ruling on a motion for a preliminary injunction, courts consider four factors: "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the [movant] . . . will succeed on the merits; and (4) the public interest." <u>Id.</u> at 812. The first two factors – the balance of hardships – are the most important. <u>Id.</u> The movant has the burden of proving "by a clear showing" that these factors support a preliminary injunction. <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997).

The Newbolds fail to carry their burden. In particular, there is no clear showing of irreparable harm inasmuch as adequate remedies of law exist for their alleged harms. <u>Direx</u>, 952 F.2d at 812. The court also finds that, in what is essentially a contract claim, the hardships to the Newbolds in the absence of an injunction largely mirror those to the lenders in the face of an injunction. Thus, they do not tip in the Newbolds' favor. Even if the balance "tipped decidedly" toward them, however, the Newbolds could not possibly meet the lesser

16

standard of raising questions "so serious, substantial, difficult and doubtful as to make them fair ground for litigation and thus for more deliberative investigation" because their claims raised here are utterly without merit.[8] Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991); cf. Joe v. Ozmint, No. 2:08-0585-PMD-RSC, 2008 U.S. Dist. LEXIS 95867, at *12, 14, 17 (D.S.C. Nov. 21, 2008) (denying injunction based solely on failure of merits). The public interest also favors holding note makers to their promises. UBS PaineWebber, Inc. v. Aiken, 197 F. Supp. 2d 436, 448 (W.D.N.C. 2002). For the reasons noted, therefore, the Newbolds' request for preliminary injunctive relief is denied.[9]

**III. CONCLUSION**

The court has considered all of the Newbolds' arguments. For the foregoing reasons, IT IS THEREFORE ORDERED that the motion for preliminary injunction (Doc. 63) and motion for order to show cause for civil contempt (Doc. 65) are DENIED.

/s/ Thomas D. Schroeder
United States District Judge

January 30, 2009

---

[8] Again, the court expresses no opinion on whether the Newbolds may have any claim against the lenders, whether under contract or arising out of the alleged debt reporting and collection activities.

[9] Countrywide's request for attorneys' fees, made without citation, is denied. (Doc. 74 at 9.)

17